**IN THE UNITED STATES DISTRICT COURT OF GEORGIA
NORTHERN DISTRICT**

| | | |
|---|---|---|
| Robert William Graham, on behalf of himself and all others similarly situated, | ) | Civil Action No. |
| | ) | Hon. Judge |
| | ) | |
| v. | ) | Case No. |
| | ) | CLASS ACTION |
| | | ORIGINAL COMPLAINT FOR FRAUD, |
| AT&T MOBILITY LLC, | ) | DECEPTIVE AND UNFAIR TRADE PRACTICES, and VIOLATIONS: |
| AMERICAN EXPRESS COMPANY | ) | (1) Ohio. Rev. Code §4165.03, 2737.20 |
| Defendants. | ) | (2) Ohio Rev. Code 1345.01 et.seq, OAC 109:4-3-01-05 09, 11, 21 and 25, |
| | ) | (3) Ohio Rev. Code§ 2721.16, 2315.21; |
| | ) | JURY TRIAL DEMANDED |
| | ) | CLASS ACTION COMPLAINT CASE NO. |

1.      Plaintiff Robert William Graham (collectively, "Plaintiff(s)") bring each cause of action in this Complaint in his individual capacity and/or on behalf of a class of similarly situated consumers, as set forth below, against Defendants AT&T Mobility LLC ("AT&T") and AMERICAN EXPRESS COMPANY ("AMX")and respectfully allege as follows:

INTRODUCTION

1.      This case challenges a bait-and-switch scheme perpetrated by AT&T against its wireless service customers.  AT&T prominently advertises upgrade exchange programs.  Such a program was in place 2020.  After customers call for an upgrade, rather than an upgrade, AT&T actually sends the customer one or more new phones with new lines and new numbers charges (i.e., a new service and in essence a new contract to which the Plaintiff has not agreed to and new term without recognizing the three day right to rescind by Ohio law, note Exhibit A AT&T Screen Chat Day of Issue). AT&T covertly sends a notice with the phone(s) in a box that if they return outside of the predetermined return date by AT&T, the customers are responsible for the phone(s) cost as well as the entire term (2 year) period.  AT&T sends and RMA label (Exhibit B AT&T RMA LABEL) with the phone(s) for the return of the phone(s) to be returned which it knows its RMA agent will not meet the return timeline.

2.      Upon receipt of the phone(s), the phones are returned within the time period by the customer using the RMA (Exhibit B AT&T RMA LABEL) provided labels through the US Postal Service.

3.     In the instant case, Plaintiff(s) returned the unordered phones the day after receiving the unordered phone(s) see Exhibit C Screen Shot (or within the statutory right to rescind period and within AT&T's return policy date).

4.     A video was made of the return and tracking receipt was obtained from the US the US Postal Office (Exhibit D Part 1, Part 2 and Part 3 return video).

5.     In the interim, consumer, tracked through Newgistics, AT&T's agent, the return of the phones which took nearly a month and verification of the phones return was acknowledged by AT&T's employee (see Exhibit E AT&T Email).

6.     Meanwhile, AT&T did not recognize the returns in its system and continued to bill Plaintiff for phones and services not ordered (see Exhibits F and G and H).

7.     This continued for several months, where AT&T suspended Plaintiff's account pending payment of the phones and fraudulent charges (see Exhibit H) which appeared on Plaintiff's account and held Plaintiff's business cell number hostage until payment was made.

8.     Plaintiff, who is a patent attorney, was not able to port his number to another carrier as dual authentication using Plaintiff's prior number was required for a credit check and AT&T held captive this number and Plaintiff was without use of his number for receiving calls in his business for several weeks and caused loss of business in addition to the lost time in AT&T's fraudulent actions.

9.     Plaintiff spent over 60 hours in trying to resolve this matter over three months, where calls to AT&T are forwarded to AT&T's co-owned China affiliates and attaches screen shots of times on hold with calls to AT&T (See Exhibit I March 16 2021, Exhibit J March 16 2021 and Exhibit K March 17 2021 K).

10.     AT&T sends out phones and new service indicating if not received within 30 days from Plaintiff's receipt thereof, Plaintiff is liable for cost of phones and service.

11.      AT&T's scheme is tied to using certain agents and RMA labels which delay the return delivery and lead to the Plaintiff being automatically charged by AMX or forced into contracts not agreed to providing phones and wireless telephone services (interconnect charges and cell site rental charges).

12.  Plaintiff(s), by this action, seek a public injunction to enjoin AT&T and AMX from their false and deceptive practice and to require AT&T to disclose to the consuming public, in advance, that its RMA return label is NOT to be relied on as a mechanism for return of the phones AT&T sends out to customers in order to avoid being bound by the return policy terms of the phones and service and/or that AT&T provide a mechanism whereby consumers can provide evidence of shipping a return phone in a timely manner and thus suspending all charges until confirmation of the return phone is received and confirmed and if not received, then inform the consumer that the phone(s) have not been received in a manner as outlined in their agreement and providing consumer an opportunity to show proof of return prior to charges; and that AMX and AT&T not be permitted to conspire to automatically charge an account of Plaintiff(s) for such fraudulent charges.

13. Plaintiff(s) further seek, on behalf of themselves and a class of all similarly situated consumers, an award of damages, restitution, pre- and post-judgment interest, attorneys' fees and costs, and permanent injunctive relief, including but not limited to that AT&T release Plaintiff(s) cell number for porting to another carrier; that AT&T and AMX discontinue charging Plaintiff(s) for phones returned and not ordered; and assess

putative damages for its scheme in an amount exceeding the minimum jurisdictional amount and punitive damages in excess of one million dollars.

14. Plaintiff Robert William Graham is a citizen and resident of Springboro, Ohio.

15. AT&T Mobility LLC ("AT&T") is a Delaware limited liability company with its principal office or place of business at 1025 Lenox Park Boulevard NE, Atlanta, GA 30319 and AMERICAN EXPRESS COMPANY ("AMX") is a New York corporation with a principal place of business at 65 Broadway, New York, New York 10006.

16.    AT&T and AMX transact business in this district and throughout the United States.

JURISDICTION AND VENUE

17. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy, exclusive of interest and costs, exceeds $75,000, and this is a proposed class action in which there are members of the proposed Class who are citizens of a state different from AT&T and AMX.

18. This Court has personal jurisdiction over AT&T and AMX because, without limitation: (1) AT&T and AMX have each purposely availed itself of the privileges of conducting business activities in Ohio; (2) AT&T and AMX currently maintain systematic and continuous business contacts with Ohio including marketing, selling, and issuing wireless services to Plaintiff(s) and other Ohio consumers; (3) AT&T and AMX have entered into contracts with Plaintiff(s) and other Ohio consumers to provide wireless services and or charge Plaintiff(s) for goods and services; and (4) AT&T maintains offices and retail locations throughout Ohio.  AT&T and AMX each has sufficient

minimum contacts with Ohio to render the exercise of jurisdiction by this Court permissible.

19. Venue is proper pursuant to 28 U.S.C. §1391 because Plaintiff(s) reside in Ohio and AT&T Defendant has its principal place of business in Georgia and AMX Defendant has its principal place of business in New York; many of the acts and transactions giving rise to this action occurred in this District; AT&T and AMX are authorized to conduct business in this District, has each intentionally availed itself of the laws and markets within this District through distribution and sale of its goods/services in this District, does substantial business in this District, and is subject to personal jurisdiction in this District.

20. Intra-District Assignment. This Court find that this action may properly be brought or assigned to the Dayton Division, where Plaintiff Graham resides, but this is not deemed necessary.

FACTUAL ALLEGATIONS

21. AT&T falsely and deceptively send its customers upgrades in the form of new phones an new lines, not disclosing and not including a suitable return method of such unordered phones whereby AT&T imposes on all such customers failing to have returned such phones by AT&T in a time period which AT&T sets, and AT&T through AMX charge for such phones and service charges for such phones for a 2 year period.

22.    AT&T provides its own RMA label with these new phones (aka upgrades), which due to its agents essentially guarantees a late arrival and uses this as a lever to covertly, improperly, and unilaterally charge for phones and services and holding customer's number hostage until such fees are paid.

23.  AT&T provides its RMA label as a delivery manner that is designed by AT&T to further ensure that the return and receipt dates they go unnoticed by customers .

24. Through the scheme alleged herein, AT&T and AMX have, in effect, created a way to charge for new phones and new services that are not ordered and yet timely returned, and to secretly further increase its service price to existing customers at its whim, via this scheme and deceptive.

25.    Phone charges as a result of AT&T and AMX's deceptive practices results in charges of nearly $1000 per phone with tied contracts for two year period.

26.    In 2020, AT&T ran a broad-scale national television advertisement promoting its wireless service plans for under $40 per line per month with free upgrades for certain phones and /or trade-ins.

27.    If a customer happens to notice these activation and phone fees have been charged on their monthly statement, and contacts AT&T via phone or online to inquire about the fee, AT&T agents tell the customer that the fees are as a result of phones not being timely returned.

28.    Further, customer is charged a pay a one-time activation fee for such lines not ordered, that is refundable for only three days—well before they receive the first monthly bill which Plaintiff(s) receive approximately two weeks after the sign up period, either via an email notice directing them to a payment website as described above, or via a mailed printed billing statement if they have not signed up for electronic billing.

29. Customers (Plaintiff(s)) are signed up for a one-year or two-year service commitment and are charged an early termination fee if they cancel their service more than 14 days after purchase/receipt (again, the customers (Plaintiff(s)) do not receive

notice of their first statement until around that 14 day post phone receipt or later) and are automatically charged for phone(s) and service(s) on existing credit account of AMX which consumer is unable to remove due to AT&T's relationship with such AMX.

30. Third, many customers purchase devices (such as new cellular phones) with their service plans; indeed, AT&T markets devices and wireless plans in bundles. The devices can only be returned to AT&T within the first 14 days after purchase. If customers return a device within 14 days of purchase (again, typically still before receipt of the first monthly billing statement), they pay a restocking fee of up to $45 or 10% of accessory prices over $200.

31.     If Customer, Plaintiff(s) wait longer than 14 days, it is too late and Customer, Plaintiff(s) are on stated to be liable for the full purchase price of the device, typically $1000 or more.

32.     AT&T has offered installment plans to pay for new devices that are tied to customers' service plans. Instead of a one-year or two-year service commitment, many AT&T wireless customers today ostensibly have a month-to-month service plan but sign 24-month or 30-month installment agreements with AT&T under which customers pay for their cellular phone (i.e., the device) in monthly installments. For example, a customer would pay, for an $800 phone, an equipment "installment" charge of $30 on each monthly AT&T bill for 24 months. If a customer cancels her service plan any time before the installment plan is paid off, the full outstanding balance of her device becomes due immediately in a single balloon payment. For example, even if the customer notices the very first monthly statement (despite AT&T's efforts to hide it), and thereby immediately chooses to cancel her service, AT&T will demand that the

customer immediately pay the entire remaining $800 balance all at once or charge them through AMX. (If consumer returns the device within the 14-day return deadline, typically prior to having received the first bill, she must still pay the restocking fee mentioned above.) In this way the installment plan balloon payment is similar to an early termination fee, creating a large immediate cost to cancelling the AT&T service plan once customers learn their plans' actual monthly prices are higher than advertised.

33. The activation fee, phone fee, restocking fee, early termination fee, and installment balloon payment all function as ways to penalize and deter customers from cancelling after receiving phone and/or signing up, and AT&T's and AMX policies (including the cancellation/return periods and how they relate to the timing of the billing statements) are deliberately and knowingly designed by AT&T and AMX to lock customers in if and when they deduce that they are being charged more per month than advertised.

34. AT&T and AMX also charges an Administrative Fee charge ($1.99) per phone in addition to the phone and each of the three subsequent increases to the Administrative Fee, AT&T knows that customers are unlikely to notice the increased charge on the total price on their monthly bills. Given that taxes and other government-related charges can already vary by amounts smaller than one dollar from month to month, 35.

35. AT&T and AMX know that customers reasonably expect small changes in the total amount billed each month and will not be able to tell that AT&T and AMX imposed or increased the Administrative Fee simply by comparing the total amount billed that month to the total billed in the prior month or months.

36.  Even if customers noticed that AT&T and AMX imposed or increased the
Administrative Fee, as discussed above, they would have to pay penalties and interest
at that point if they wanted to cancel their AT&T service after learning of the fee or of a
fee increase, as alleged herein.  AT&T and AMX each has drafted its contractual terms
regarding cancellation fees and the like so that there are no exceptions, meaning these
cancellation fees and similar costs would apply no matter how high AT&T and AMX
chose to unilaterally determine.

Plaintiff Graham

37. Plaintiff(s) Graham is, and at all relevant times has been, an Ohio resident.

38. Graham first became an AT&T pre paid wireless customer (or Defendant's
predecessor) on or around January, 1991. He signed up for his first AT&T prepaid
wireless service plan at an AT&T store in the Ohio Area.  He signed up for a service
contract with AT&T and had service with AT&T for nearly thirty years.

39. When Graham purchased his wireless service plan, AT&T prominently advertised, to
Graham and to the public, that the plan would cost a particular monthly price.  AT&T
did not disclose to Graham, at any time before or when he signed up, that AT&T would
or might later add fees on top of the advertised and promised monthly price of any
phone service, particular those not ordered and returned.

40.  Graham continued to have the same AT&T pre-paid service plan until
March 16, 2021.

41.  AT&T and AMX charged Graham the complained of unauthorized fees at least as
early as February 2021. Graham did not receive notice or adequate notice that the fees

would be charged or regarding the nature or basis of the fees. AT&T and AMX have continued to charge Graham said fees complained of herein to the present.

42. Graham attempted to upgrade his device in December 2020, AT&T represented to Graham that the upgrades would be a new phone, not a new service and number, and hence doubled the number of lines on Graham's service.

43. Upon inquiry into the matter, Graham learned he was speaking with AT&T's department based in South Africa and did not feel comfortable with this cancelled the transaction the same day and informed AT&T in writing that day (Exhibit A ATT Screen Chat Day of Issue).

44. Nevertheless, AT&T generated and order and sent out phone(s) to Graham.

45. Graham's cancellation was within the three days as permitted by Ohio SCPA ORC 1345.01 et.seq, OAC 109:4-3-01-05 09, 11, 21 and 25.

46. AT&T and AMX setup charges to Graham's account despite there being no contract as to these new phones and service.

47. AT&T and AMX's material misrepresentations and nondisclosures are likely to mislead reasonable consumers, existing and potential customers, and the public.

48. AT&T and AMX's misrepresentations and nondisclosures deceive and have a tendency to deceive the general public and reasonable consumers.

49. AT&T and AMX's misrepresentations and nondisclosures are material, such that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

50. Plaintiff(s) and members of the proposed Class reasonably relied on AT&T and AMX's material misrepresentations and nondisclosures, and would not have

purchased, or would have paid less money for, AT&T's wireless service plans had he (they) known the truth.

51.  By its conduct and omissions alleged herein, AT&T and AMX's received more money from Plaintiff(s) and the Class than it should have received, including the excess phone fees, Administrative and Interest Fees that AT&T and AMX's charged Plaintiff(s) and the Class on top of the advertised prices for the service plans, and that money is subject to restitution.

52.  As a direct and proximate result of AT&T and AMX's unfair, unlawful, and fraudulent conduct, Plaintiff(s) and the proposed Class members lost money, have had service impaired with inability to obtain new service due to AT&T holding the phone number of Plaintiff(s) and the inability to get credit reports unfrozen due to dual authentication which requires use of Plaintiff's number to get a text message at Plaintiff's number and credit unfrozen in order to gain new service.

53.  AT&T's and AMX's conduct has caused substantial injury to Plaintiff(s), proposed Class members, and the public.  AT&T's and AMX's conduct is ongoing and is likely to continue and recur absent a permanent injunction.

54.  Accordingly, Plaintiff(s) seek an order enjoining AT&T and AMX from committing such unlawful, unfair, and fraudulent business practices.

55.  Plaintiff(s) further seek an order granting compensatory damages and punitive or exemplary damages to Plaintiff(s) and the Class in an amount to be proven at trial an . Plaintiff(s) further seek an award of attorneys' fees and costs under Ohio. Rev. Code § 2721.16, 2315.21.

56. Absent injunctive relief, AT&T and AMX's will continue to injure Plaintiff(s) and the Class members.  AT&T's and AMX's misrepresentations and omissions regarding the true phone/service plan prices and regarding the fees are ongoing.

57.  Moreover, AT&T and AMX continue to charge customers the unfair and unlawful fees.

58.    Even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by AT&T and AMX, which is are dominant players in the industry and has many millions of customers in Ohio alone.

59. Plaintiff(s) individually seek public injunctive relief, under the Ohio Consumer Law, to protect the general public from AT&T's false advertisements and omissions— including AT&T's advertising of upgrades to new phones, monthly service rates that do not reflect the true rates, and AT&T's failure to disclose or adequately disclose return policy and methods of return of devices including phones but not limited to phones, and the true costs/rates or the Administrative Fees associated with all phone services and AT&T and AMX's unlawful charging practices which negatively impair Plaintiff(s) credit and the ability to gain new service and goods.

SECOND CAUSE OF ACTION:

Violation of Ohio. Rev. Code §§4165.03, 4165.03 (as used herein Ohio's False Advertising Law ("FAL").

60. Plaintiff(s) reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this cause of action.

61. By its conduct and omissions alleged herein, AT&T or/and AMX have committed acts of untrue and misleading advertising, as defined by and in violation of Ohio. Rev.

Code §§4165.03, 1345.09.  These acts include but are not limited to: (a) misrepresenting the prices of its wireless service plans and phone costs; (b) failing to disclose or adequately disclose the true prices of its wireless service plans, phone costs, and the existence, amount, or nature of administrative and interest fees; (c) continuing to hide, obscure, and misrepresent the fees even; and (d) describing the phone and service fee, in its buried description, in a manner that is false and misleading.

62. With respect to omissions, AT&T and AMX at all relevant times had a duty to disclose the information in question because, inter alia: (a) AT&T and AMX had exclusive knowledge of material information that was not known to Plaintiff(s) and the Class; (b) AT&T and AMX concealed material information from Plaintiff(s) and the Class; and (c) AT&T or/and AMX made representations, including regarding the supposed phone cost, service costs, interest charges, administrative charges, which were false and misleading absent the omitted information.

63.  AT&T's and AMX's misrepresentations and nondisclosures deceive and have a tendency to deceive the general public.

64.  AT&T's and AMX's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

65. Plaintiff(s) and members of the proposed Class reasonably relied on AT&T's and AMX's material misrepresentations and nondisclosures, and would not have purchased, or would have paid less money for, AT&T's phones and service plans had they known the truth.

66. By its conduct and omissions alleged herein, AT&T and AMX received more money from Plaintiff(s) and the Class than it should have received, including the excess phone charges, service fees, interest and administrative fees that AT&T and AMX charged Plaintiff(s) and the Class and that money is subject to restitution.

67. As a direct and proximate result of AT&T's and AMX's violations of the FAL, Plaintiff(s) and the proposed Class members lost money.

68. AT&T's and AMX's conduct has caused substantial injury to Plaintiff(s), proposed Class members, and the public.

69. AT&T's and AMX's conduct is ongoing and is likely to continue and recur absent a permanent injunction.

70. Accordingly, Plaintiff(s) seek an order enjoining AT&T and AMX from committing such violations of the FAL.

71. Plaintiff(s) further seek an order granting restitution and punitive or exemplary damages to Plaintiff(s) and the Class in an amount to be proven at trial.

72. Plaintiff(s) further also seek an award of attorneys' fees and costs under Ohio Rev. Code §§ 1345.09, 2721.16, 2315.21.

73. Absent injunctive relief, AT&T and AMX will continue to injure Plaintiff(s) and the Class members.

74. AT&T's and AMX's misrepresentations and omissions regarding the true service plan prices and regarding the phone, service, interest and administrative fees are ongoing.

75. Moreover, AT&T and AMX continues to charge customers the unfair and unlawful phone, service, interest and administrative fees.

76.  Even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by AT&T and AMX, which are dominant players in the industry and has many millions of customers in Ohio alone.

77. Plaintiff(s) individually seek public injunctive relief, under the FAL, to protect the general public from AT&T's false advertisements and omissions—including AT&T's advertising of phone upgrade and service plans that do not reflect the true cost, and AT&T's and AMX's failure to disclose or adequately disclose the true cost of phone, service, interest and administrative fees.


THIRD CAUSE OF ACTION:

Violation of the : CONSUMER SALES PRACTICES Ohio Rev. Code §1345, et seq..

Plaintiff(s) reallege and incorporate by reference every allegation set forth in the including an arbitration clause which waives the right to seek public injunctive relief in any forum, in violation of Ohio law.

78. AT&T and AMX is a "person/supplier" within the meaning of Ohio Rev. Code §1345.

79. Plaintiff(s) and the proposed Class members are "consumers," as defined by Ohio Rev. Code §1345.

80. The wireless service plans and phone that AT&T marketed and sold are "goods and services," as defined by Ohio Rev. Code §1345.

81. The purchases of AT&T's phones and wireless service plans charged through AMX by Plaintiff(s) and proposed Class members are "transactions," as defined by Ohio Rev. Code §1345.

82. Plaintiff(s) and proposed Class members purchased AT&T's phone(s) and/or wireless service plans for personal, family, and household purposes as meant by Ohio Rev. Code §1345.

83.    AT&T and AMX inserted unconscionable provisions in its consumer agreements, and business practices.

84. Venue is proper under 28 U.S. Code § 1391 because a substantial portion of the transactions at issue occurred in this county and at least of the Defendant(s) and Plaintiff(s) resides in this county.  Plaintiff(s)' declarations establishing that this Court is a proper venue for this action are attached hereto as Exhibit A.

85.  AT&T intentionally deceived Plaintiff(s) and proposed Class members, and continues to deceive the public, by misrepresenting the prices of its services and by failing to disclose or adequately disclose the phone costs and Administrative Fee or the true prices of the services.  AT&T has intentionally deceived Plaintiff(s) and the proposed Class members, and continues to deceive the public, by misrepresenting and failing to disclose or adequately disclose material information about the true prices of the phones and services and about the existence, amount, and basis of the Administrative Fee.

86. AT&T's and AMX's conduct alleged herein has violated the Ohio Rev. Code §1345, et seq. in multiple respects, including, but not limited to, the following:

a. AT&T advertised its wireless service plans and phones with an intent not to sell them as advertised (Ohio Rev. Code §1345, et seq.);

b. AT&T and AMX misrepresented its phone costs and wireless service plans and charges (Ohio Rev. Code §1345, et seq.); and

With respect to omissions, AT&T and AMX at all relevant times had a duty to disclose the information in question because, inter alia: (a) AT&T or/and AMX had exclusive knowledge of material information that was not known to Plaintiff(s) and the Class; (b) AT&T or/and AMX concealed material information from Plaintiff(s) and the Class; and (c) AT&T or/and AMX made partial representations, including regarding the phone upgrades and purchases, supposed monthly prices of the services, charges to be automatically placed on Plaintiff(s) account which were false and misleading absent the omitted information.

87. AT&T's and AMX's misrepresentations and nondisclosures deceive and have a tendency to deceive the general public.

88. AT&T's and AMX misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

89. Plaintiff(s) and members of the proposed Class reasonably relied on AT&T's or/and AMX's material misrepresentations and nondisclosures, and would not have purchased, or would have paid less money for AT&T's phone(s) and/or service plans had they known the truth.

90. As a direct and proximate result of AT&T's violations of the law, Plaintiff(s) and the proposed Class members have been damaged.

91. AT&T's  and AMX's conduct alleged herein caused substantial injury to Plaintiff(s), proposed Class members, and the public.

92. AT&T's and AMX's conduct is ongoing and is likely to continue and recur absent a permanent injunction.

93.  Accordingly, Plaintiff(s) seek an order enjoining AT&T and AMX from committing such practices.

94.  Plaintiff(s) also seek attorneys' fees and costs.

95.  Plaintiff(s) individually seek public injunctive relief, under Ohio Rev. Code 1345.01 et.seq, OAC 109:4-3-01-05 09, 11, 21 and 25, Ohio Rev. Code§ 2721.16, 2315.21;, to protect the general public from AT&T's and AMX's false advertisements and omissions and fraudulent action.

96.  In accordance with Ohio Rev. Code §1345, et seq., on April 26, 2021, Plaintiff(s)' counsel served AT&T and AMX with notice of its Ohio Rev. Code §1345, et seq. violations by hand delivery.

97.  A true and correct copy of that notice is attached hereto as Exhibit B.

98.  If AT&T and AMX fails to provide appropriate relief for itsOhio Rev. Code §1345, et seq. violations within 30 days of Plaintiff(s)' notification letter, Plaintiff(s) will proceed with this complaint and amend as necessary to seek compensatory and exemplary damages as permitted by Ohio Rev. Code §1345, et seq., OAC 109:4-3-01-05 09, 11, 21 and 25, Ohio Rev. Code§ 2721.16, 2315.21


FOURTH CAUSE OF ACTION: (Individually)

Permanent Public Injunctive Relief

Under Ohio Rev. Code §§ 2737.20, 4165.03. and All Inherent or Other Authority

99. Plaintiff(s) reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this cause of action.

100. If not enjoined by this Court, AT&T and AMX will continue to injure the general public through its false advertising and omissions and fraudulent activity alleged herein, which are directed at the consuming public, including in Ohio.

101. In order to prevent injury to the general public, Plaintiff(s) individually seek public injunctive relief in the form of a judgment and injunction to permanently enjoin AT&T from its false advertising and to require AT&T and AMX to disclose to the public in advance the true prices consumers will pay if they sign up for AT&T's wireless services, or as the Court otherwise deems just and proper.

102. The balance of the equities favors the entry of permanent public injunctive relief. The general public will continue to be harmed, and AT&T's and AMX's unlawful behavior is likely to continue, absent the entry of permanent public injunctive relief. Therefore, a public injunction is in the public interest.

FIFTH CAUSE OF ACTION:

Breach of the Implied Covenant of Good Faith and Fair Dealing.

103.    Plaintiff(s) reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this cause of action  alleged herein.

104.    AT&T and AMX has violated the covenant of good faith and fair dealing by its conduct Plaintiff(s) reallege and incorporate by reference every allegation set forth herein. Plaintiff(s) allege this cause of action in the alternative.

105. To the extent AT&T's Wireless Customer Agreement could be read as granting AT&T and/or AMX's discretion to impose charges and fees, which Plaintiff(s) do not concede, that discretion is not unlimited, but rather is limited by the covenant of good faith and fair dealing implied in every contract by Ohio law and as to any new phone

and service, to the extent Plaintiff(s) have rescinded within the statutory period no such agreement can exist.

106. AT&T and AMX has abused any discretion it had under the contract to impose phone charges and ifee. On information and belief, AT&T and AMX imposed charges and fees, and these are misleadingly as stated in their adhesions agreement with consumers.

107. AT&T's and AMX's imposition of charges and fees defied customers' reasonable expectations, was objectively unreasonable, frustrated the basic terms of the parties' existing agreement, and was arbitrary and in bad faith.

108. AT&T's and AMX's conduct described herein has had the effect, and the purpose, of denying
 Plaintiff(s) and Class members the full benefit of their bargains with AT&T and AMX.

109. Plaintiff(s) and the Class members have performed all, or substantially all, of the obligations imposed on them under their contracts with AT&T and AMX. There is no legitimate excuse or defense for AT&T's and AMX's conduct.

110. Any attempts by AT&T and AMX to defend its unauthorized charging through reliance on contractual provisions will be without merit.  Any such provisions are either inapplicable or are unenforceable because they are void, illusory, lacking in mutuality, are invalid exculpatory clauses, violate public policy, are procedurally and substantively unconscionable, violate the law and are unenforceable in light of the hidden and deceptive nature of AT&T's and AMX's misconduct, among other reasons.  Any such provisions, if any, would not excuse AT&T's and AMX's abuses of discretion or

otherwise preclude Plaintiff(s) and the Class from recovering for breaches of the covenant of good faith and fair dealing.

111. Plaintiff(s) and members of the Class sustained damages as a result of AT&T's and AMX's breaches of the covenant of good faith and fair dealing. Plaintiff(s) seek damages in an amount to be proven at trial.

PRAYER FOR RELIEF

112. In order to prevent injury to the general public, Plaintiff(s) individually request that the Court enter a public injunction, under the Ohio. Rev. Code §4165.03, 2737.20, Ohio Rev. Code 1345.01 et.seq, OAC 109:4-3-01-05 09, 11, 21 and 25, Ohio Rev. Code§ 2721.16, 2315.21, enjoining AT&T and AMX's from falsely advertising false price schemes of its wireless phones and service plans and from concealing the true prices of its phones and wireless service plans;

113. Further, on behalf of themselves and the proposed Class, Plaintiff(s) request that the Court order relief and enter judgment against AT&T and AMX's as follows:

Ohio;

Order AT&T and AMX's to pay damages and restitution and punitive and exemplary to Plaintiff(s) and the Class in an amount to be proven at trial;

Order AT&T and AMX to pay court attorneys' fees, costs, and pre-judgment and post-judgment interest;

 Retain jurisdiction to monitor AT&T's and AMX's compliance with the permanent injunctive relief; and

Provide all other relief to which Plaintiff(s) and the Class may show

Declare this action to be a proper class action, certify the proposed Class, and appoint

Plaintiff(s) and their counsel to represent the Class;

Permanently enjoin AT&T from engaging in the misconduct alleged herein, and order

AT&T and AMX to discontinue unauthorized and fraudulent charging fees to its

customers in themselves justly entitled.

 JURY DEMAND

Plaintiff(s) demand a trial by jury on all issues so triable.

Dated: Friday, December 30, 2022

Respectfully submitted,

R. William Graham

Attorney Bar Number 682005

Attorney for Plaintiff, Pro Se

A Patent Lawyer LLC

150 Governors Square

Peachtree City, GA 30269

Telephone (937) 241-5300

Email: billg@apat1.com


Attorneys for Plaintiff(s) and the Proposed Class